UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD F. MARTINEZ,<br><br>   Plaintiff,<br><br> v.<br><br>C. RODRIGUEZ,<br><br>   Defendant. | Case No.: 1:21-cv-01495-JLT-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIM**<br><br>**14-DAY OBJECTION PERIOD** |

Plaintiff Ronald F. Martinez is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

### I.   INTRODUCTION

The Court issued its First Screening Order on July 13, 2023, finding that Plaintiff failed to state a claim upon which relief could be granted and gave Plaintiff leave to file a first amended complaint. (Doc. 31.)

On August 24, 2023, Plaintiff filed his first amended complaint. (Doc. 34.)

### II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

### III.    PLEADING REQUIREMENTS

#### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

**B.  Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**IV.   DISCUSSION**

**A.  Plaintiff's First Amended Complaint**

Plaintiff names C. Rodriguez, a correctional officer at California State Prison, Corcoran, as the sole defendant in this action. (Doc. 34 at 1, 4.) Plaintiff seeks compensatory and punitive damages, costs of suit and reasonable attorney's fees,[1] and the appointment of counsel to represent him in this action.[2]

**B.  Plaintiff's Factual Allegations**

<u>Claim One: First Amendment Retaliation</u>

Plaintiff states he was transferred to Corcoran State Prison in July or August 2018 and housed in general population Facility C. (Doc. 34 at 5.) At the time, all "STG-SURENOS" were subject to modified programming. (*Id*.) Plaintiff asserts that following a transfer, inmates typically receive their property within a week of arrival. (*Id*.) Plaintiff alleges he sent Defendant Rodriguez several GA-22 Request for Interview forms seeking his property "at the cell door

---

[1] Plaintiff, who is proceeding pro se, is not entitled to attorney's fees. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).

[2] Plaintiffs do not have a constitutional right to appointed counsel in section 1983 actions. *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), rev'd in part on other grounds, 154 F.3d 952, 954 n.1 (9th Cir. 1998). Nor can the Court require an attorney to represent a party under 28 U.S.C. section 1915(e)(1). *See Mallard v. U.S. Dist. Court*, 490 U.S. 296, 304-05 (1989). Plaintiff is advised he may submit a separate motion seeking the appointment of counsel. If he elects to do so, he should set forth the reasons he believes he meets the extraordinary circumstances exception. *Rand*, 113 F.3d at 1525.

3

1   forthwith and/or gym." (*Id*. at 6.) Plaintiff indicated he had "several court filing deadlines to meet
2   and engaging in discovery in another action." (*Id*.) Plaintiff noted he did not know how long the
3   modified program would last and "threatened to file a 602 against Rodriguez for obstructing" his
4   access to the courts. (*Id*.) Plaintiff alleges that Defendant "ignored all GA-22's and refused and
5   failed to respond" within three working days. (*Id*.) Plaintiff asserts he did not file a grievance
6   because, in his experience, issuance of property is severely delayed, or the property is misplaced,
7   intentionally lost or destroyed when an inmate files such a grievance. (*Id*. at 6-7.)

8        Plaintiff contends when the modified program ended, Defendant Rodriguez issued
9   Plaintiff "his property in the gym." (Doc. 34 at 7.) Plaintiff states Defendant "made an issue out
10  of how many legal books and legal document/folder" he possessed and attempted to force
11  Plaintiff "to 'throw-out' some legal documents/folders." (*Id*.) Plaintiff advised Defendant his
12  legal work "was exempted from the 6 cubic feet of allowable property," that all folders pertained
13  to an active lawsuit, and provided Defendant with proof of current court filing deadlines and
14  discovery responses. (*Id*.)

15       Next, Plaintiff asserts that when Defendant Rodriguez issued Plaintiff his television— "a
16  HITEKER 15" TV/CD Player/Radio Combo WITH SPEAKERS"— Defendant commented that
17  Plaintiff should "get his money back from whoever installed his speakers because one speaker
18  was not in its speaker block." (Doc. 34 at 7.) Plaintiff contends that despite regulations requiring a
19  prison official to confiscate such an "'altered'" appliance and to permit Plaintiff to "send the TV
20  home, destroy it, or donate" it, Defendant did not do so. (*Id*.) Defendant told Plaintiff "that he
21  could not guarantee [another] C/O would not confiscate the TV during a search and force"
22  Plaintiff to send it home. (*Id*.) Plaintiff states he thanked Defendant "for not sweating the small
23  shit." (*Id*. at 7-8.)

24       Between January 2019 and January 2020, Plaintiff filed about five grievances relating to
25  "a race-based modified program" affecting Plaintiff "and all STG-SURENOS," depriving them of
26  outdoor exercise and subjecting them to "GLADIATOR STYLE" fights "between STG-
27  SURENOS and STG-BULLDOG" inmates. (Doc. 34 at 8.) Plaintiff also filed a grievance against
28  Defendant Rodriguez "for failing and refusing to issue out inmate [packages] for STG-

SURENOS." (*Id*.) While several of the grievances were addressed during formal interviews, Defendant "acted as 'security' and was present" during the interviews. (*Id*.) Prior to each, Plaintiff requested that "only the grievance interviewer" and Plaintiff be present because Plaintiff was concerned about confidentiality and the potential for retaliation from other correctional officers. (*Id*.)

Plaintiff further contends Defendant Rodriguez was and is aware of the complaint Plaintiff filed in *Martinez v. Clark*, No. 1:19-cv-01459, naming Defendant's "fellow coworkers and friends, and prison officials." (Doc. 34 at 8.) That suit relates to the same grievances discussed in Defendant's presence during interviews about the race-based modified program. (*Id*.)

In late 2020,[3] Defendant Rodriguez was acting as an escort officer while Plaintiff participated in settlement proceedings in a Northern District of California action titled *Martinez v. Hatton*. (Doc. 34 at 8.) The office door was open during the proceedings and Defendant was standing outside the door. (*Id*.)

Next, Plaintiff asserts that between January 2019 and January 2021, Defendant Rodriguez, accompanied by two or three other officers, searched his cell on two occasions, but did not confiscate his television "in accordance to CCR 3190(n) and/or 3391(c)(1)-(3)." (Doc. 34 at 9.)

During the height of the COVID-19 pandemic, prison officials required all prisoners and staff to wear a face mask. (Doc. 34 at 9.) On April 29, 2020, Defendant Rodriguez was conducting cell feeding and Plaintiff asked Defendant why he was not wearing a face mask. (*Id*.) Defendant ignored Plaintiff's question and directed him to "turn on his bright light if he and his cell mate wants to be fed." (*Id*.) In response, Plaintiff told Defendant "he could see perfectly into the cell, [don't] get scared now, and that defendant should be more worried about wearing his face mask" for both of their safety "more than a stupid light." (*Id*.) Plaintiff also asserts he told Defendant that "he and all other C/O's think that green uniform protects you from everything…. [Let's] see it protect you from not dying from COVID-19 or the 602's [I'll] file against your ass." (*Id*.) Later that day, Plaintiff contends a fellow STG Sureno inmate was advised by Defendant

---

[3] Plaintiff cannot provide the exact date of the proceedings because Defendant Rodriguez "stole and destroyed [his] home made 'legal calendar' that depicted 'date(s)' and 'time(s).'" (Doc. 34 at 8-9.)

1   Rodriguez that inmates had Plaintiff to thank for not receiving packages on that date following
2   Plaintiff's threat to file a grievance. (*Id*. at 9-10.) Plaintiff contends Defendant Rodriguez was
3   attempting to have him "attacked, 'removed' from the facility by fellow STG-SURENOS by
4   refusing to issue out STG-SURENOS packages" based on Plaintiff's threat to file a grievance.
5   (*Id*. at 10.) Plaintiff was "frightened and scared but also relieved STG-SURENOS MAC REPS
6   were NOT gullible, naïve" to Defendant's tactics. (*Id*.) Plaintiff asserts that according to STG-
7   SURENOS prison politics," he had "all right" to assault, stab, or attempt to kill Defendant
8   Rodriguez for Rodriguez's attempt to have Plaintiff assaulted. (*Id*.) Plaintiff states he "decided
9   not to because he had other more important issues at hand," including prosecuting other actions.
10  (*Id*.)

11  On May 21, 2021, Plaintiff asserts he was involved in a three-on-one assault on an inmate
12  with an inmate manufactured weapon; as a result, he was placed in Ad-Seg for attempted murder.
13  (Doc. 34 at 10.) That same evening, Correctional Officer E. Payan packed Plaintiff's property
14  "and noted all appliances were working" on the inventory form. (*Id*.) Plaintiff contends policy
15  requires he be provided with a copy of the form. (*Id*.)

16  Plaintiff asserts he suffered a severe head injury after being shot with a "40 mm 'block
17  gun,'" was transported to an off-site hospital for treatment and discharged on May 23, 2021, and
18  was then housed in the infirmary. (Doc. 34 at 10-11.) On May 24, 2021, Plaintiff sent Defendant
19  Rodriguez "the first of several GA-22's requesting a copy" of the inventory form and the related
20  policy. (*Id*. at 11.) Defendant ignored six or seven requests between that date and June 25, 2021.
21  (*Id*.)

22  On June 23, 2021, Plaintiff states Officer Trevino issued him his legal files, books and
23  manuals, cosmetics, and food times. (Doc. 34 at 11.) However, Plaintiff's television was missing.
24  (*Id*.) Plaintiff asserts he "immediately KNEW defendant had something to do with the missing
25  TV!!! Defendant was NOT working the night of May 21, 2021, attempted murder of the inmate.
26  And while his property was stored in Facility 'C' gym, [Plaintiff] alleges defendant reopened his
27  property boxes and stole his TV with speakers." (*Id*.) Plaintiff asserts that without the inventory
28  form he "does not know exactly what" Defendant stole. (*Id*.) Next, Plaintiff asserts that after

inspecting the returned property, he was missing the following: (1) a legal size envelope containing art, sketches, drawings, patterns, copies of art work, and "prison art;" (2) a legal envelope containing case law pertaining to outdoor exercise, equal protection regarding race-based modified programs, a motion to compel responses to discovery requests, and all documents relating to "the current and pending lawsuit against [Defendant's] friends, coworkers, and officials" in the *Martinez v. Kent* action; and (3) Plaintiff's homemade legal calendar reflecting filing deadlines and due dates, grievance responses, dates for teleconferences concerning the *Hatton* settlement proceeds, and dates relevant to the deprivation of outdoor exercise over the previous seven months. (*Id*. at 11-12.) Plaintiff asserts Defendant Rodriguez is "responsible for the theft and destruction" of that property. (*Id*. at 12.)

On July 12, 2021, in response to Plaintiff's grievance regarding the stolen television and other property, Officer Crystobal saw Plaintiff in the infirmary and issued him an inventory form dated May 21, 2021, for the property packed by Officer Payan and another inventory form dated May 23, 2021, prepared by Defendant Rodriguez; Plaintiff alleges the latter is evidence that Defendant "reopened" Plaintiff's packaged property in violation of policy "wherein he then stole" Plaintiff property "and confiscated/destroyed the property." (Doc. 34 at 12.) Plaintiff further contends the May 23, 2021, inventory form prepared by Defendant indicates he also confiscated "3-56 qt. plastic storage containers [and] 1-digital antenna." (*Id*.) Plaintiff claims Officer Crystobal told Plaintiff not to "get mad" because he was "only the messenger," but that Defendant Rodriguez had "already 'destroyed your TV'" and Plaintiff was to choose whether to send the storage containers and antenna home, or to donate or destroy them. (*Id*.) Plaintiff states he was permitted to keep the storage containers and antenna pending resolution of the "RVR for the attempted murder of an inmate," and that even after its disposition he was permitted to keep that property. (*Id*. at 12-13.) Plaintiff maintains Defendant "does not get to choose the disposition" of Plaintiff's television because pursuant to policy it is Plaintiff's "choice ONLY!!!" (*Id*. at 13.)

Plaintiff alleges Defendant Rodriguez retaliated against Plaintiff for threatening to file a grievance against Defendant, filing various grievances concerning the race-based modified

7

1    program and orchestrating gladiator style fights, and for filing suit against Defendant's "friends,
2    coworkers, girl/boyfriend(s)" in *Martinez v. Clark*. (Doc. 34 at 13.) Plaintiff alleges Defendant
3    did so by reopening his packaged property and "stealing and keeping" his television and
4    destroying the legal envelopes. (*Id*.) Those "adverse actions 'chilled'" Plaintiff's exercise of his
5    First Amendment rights and did not reasonably advance any legitimate correctional goals. (*Id*.)

<u>Claim Two: Fourteenth Amendment Due Process</u>

7    Plaintiff asserts he wanted to send his television home pursuant to policy, but was
8    "prevented, obstructed from doing so" because Defendant Rodriguez "made the 'choice'" for
9    him. (Doc. 24 at 6.) Plaintiff alleges he made that discovery when Officer Crystobal visited him
10   in the infirmary on July 14, 2021. (*Id*.)

11   Plaintiff states he became angry because "he knew" Defendant Rodriguez stole his
12   television in retaliation for Plaintiff threatening to file a grievance against Defendant, filing other
13   grievances, "filing the BAUGHMAN lawsuit," and engaging in other protected activities, because
14   Plaintiff's television had speakers allowing Defendant "to watch/listen to NFL, NBA, the
15   Olympics, and other sports and/or lend it out to other C/O's working in control towers in housing
16   units." (Doc. 34 at 14.)

17   Plaintiff contends he wanted to send his television home so that Defendant Rodriguez
18   would not have the satisfaction "of getting over on" Plaintiff. (Doc. 34 at 14.) Defendant denied
19   Plaintiff his due process rights by refusing Plaintiff the choice of sending the television home.
20   (*Id*.) He contends that because "he altered and opened the back of his TV to install the speakers,"
21   Defendant was required by policy to issue Plaintiff a serious rules violation report. (*Id*.) Plaintiff
22   maintains Defendant did not do so "in an attempt to conceal the theft of" Plaintiff's television.
23   (*Id*.)

24   Plaintiff alleges Defendant Rodriguez acted knowingly, oppressively, and abusively by
25   stealing and confiscating his television because the "broken seals, allowing access to the inside of
26   TV" allowed Plaintiff to choose to send his television home. (Doc. 34 at 14-15.) Plaintiff asserts
27   Defendant "rendered any post deprivation remedies unavailable and/or inadequate, by his theft
28   of" Plaintiff's television. (*Id*. at 15.) He further alleges "the established post-deprivation"

8

1  remedies are inadequate "because there was no post deprivation 'interview' between" Plaintiff
2  and Defendant "and/or a Senior Hearing Officer who would have [heard] the RVR for breaking
3  the seals on the back of the TV" in violation of policy. (*Id.*)

### C. The Legal Standards Applicable to Plaintiff's Claims

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co*., 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state

employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. The Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections." *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted). Where the state provides a meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. California law provides an adequate post-deprivation remedy for the unlawful confiscation of personal property. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§810-895).

### D. Analysis of Plaintiff's Claims

Liberally construing the first amended complaint, Plaintiff plausibly alleges a First Amendment retaliation claim against Defendant Rodriguez. Plaintiff contends Defendant took adverse action against him—reopening Plaintiff's packed property and taking his television and legal property—because of Plaintiff's protected conduct—the filing of grievances and lawsuits—chilling the exercise of his First Amendment rights, and in the absence of a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

However, even liberally construing the first amended complaint, Plaintiff fails to state a due process violation involving Defendant Rodriguez. This is so because Plaintiff's factual assertions reveal the deprivation of Plaintiff's television was unauthorized. In other words, even assuming Defendant Rodriguez was involved in the confiscation of Plaintiff's television, that confiscation did not occur due to policy or regulation (an authorized deprivation). Rather, according to Plaintiff, Defendant "stole" his television. *Hudson*, 468 U.S. at 533. Moreover, despite Plaintiff's assertion to the contrary, California has an adequate post-deprivation remedy for the unlawful confiscation of personal property such as Plaintiff's television. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (the availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process); *Barnett*, 31 F.3d at 816-17; *see, e.g.*, *Duran v. Burns*, No. 1:21-cv-01290-JLT-HBK, 2024 WL

869087, *6 (E.D. Cal. Feb. 28, 2024) (plaintiff cannot state a due process claim "based on Defendant Burns stealing or giving away the personal items in his cell," including a television and coaxial cable); *Downs v. Jiminez*, No. 2:22-cv-1021 AC P, 2023 WL 6930870, at 4 (E.D. Cal. Oct. 18, 2023) (unauthorized deprivation of property does not state a claim if the state provides an adequate post-deprivation remedy; "Plaintiff's due process claim based upon Doe defendants damaging his television therefore fails to state a claim for relief"). Finally, based upon Plaintiff's factual allegations it is clear that granting Plaintiff leave to amend this claim would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile").

### E. Summary of Findings

In sum, the Court finds Plaintiff states a cognizable First Amendment retaliation claim against Defendant Rodriguez but fails to state any other claim. The Court will recommend this action proceed on Plaintiff's cognizable claim.

### V. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court **RECOMMENDS** that:

1. This action **PROCEED** *only* on Plaintiff's First Amendment retaliation claim against Defendant Rodriguez; and

2. The remaining claim or claims be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15- page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28

1  U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result

2  in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

3  IT IS SO ORDERED.

4  Dated:   **December 19, 2024**

5  UNITED STATES MAGISTRATE JUDGE